Angela **CARSWELL**

v.

**RAYTHEON EMPLOYEES DISABILITY TRUST and Metropolitan Life Insurance Company**

No. 2:00–CV–282.

United States District Court, E.D. Tennessee, at Greeneville.

April 3, 2001.

---

Timothy W. Hudson, Hudson & Dougherty, Bristol, TN, for Plaintiff.

John J. Heflin, III, Bourland, Heflin, Alvarez & Minor, PLC, Memphis, TN, for Defendants.

## MEMORANDUM OPINION

HULL, District Judge.

Angela Carswell brings this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, challenging the termination of her long-term disability benefits. Ms. Carswell worked for Raytheon as an electronics assembler until March of 1991, when she became disabled due to degenerative disc disease in her lumbar spine. She applied for, and obtained, long-term disability benefits from the Raytheon Employees Disability Trust, administered by the Metropolitan Life Insurance Company (MetLife). On April 8, 1996, MetLife discontinued her benefits, finding that she was no longer totally disabled within the policy's definition. The plan defined "total disability" (after an initial two-year period covered by a lower standard) in these terms: "because of sickness or injury, (a) you can not do your job, and (b) you can not do any other job for which you are fit by your education, your training or your experience."

Ms. Carswell exhausted her administrative remedies under the plan and then filed suit in this Court in No. 2:97–CV–133. In an Order of November 7, 1997, the Court found that, based on the then current state of the administrative record, there was no substantial evidence that there were any jobs for which Ms. Carswell was "reasonably qualified by training, education or experience." It granted a judgment in favor of Ms. Carswell and ordered her benefits reinstated as of April 26, 1996. Benefits were, in fact, reinstated. However, based upon more current medical and vocational information, benefits were terminated again as of June 23, 2000. It is this second discontinuation of benefits which is now before the Court for review.

■ There is no question that the plan at issue unambiguously vests MetLife, as Claim Administrator, with the discretionary authority to interpret the terms of the plan and to determine eligibility for, and entitlement to, plan benefits. Accordingly, the standard of review to be employed by this Court in evaluating the administrative record is the deferential, abuse of discretion standard or the "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

The administrative record developed subsequent to this Court's ruling of November 7, 1997, contains the following:

* A report of an office visit with treating orthopedist William E. Kennedy, dated March 24, 1998. Dr. Kennedy took x-rays of Ms. Carswell's lumbar spine, compared them with those from her previous visit in

September of 1996, and noted no changes. His diagnosis remained 722.52—Degenerative disk disease at L4. He noted that she continued to have low back pain with radiation through her left leg but also noted some symptom exaggeration. [R. 210].

* A six-page report of an independent medical examination of Ms. Carswell performed by orthopedist Neal A. Jewell on September 28, 1998. He diagnosed degenerative lumbar disc disease, L4–5 with small, broad-based central disc protrusion, without significant radicular syndrome. [R. 190]. He found her capable of standing or walking one to two hours at a time and six hours in an eight hour day and restricted her lifting to 30 pounds occasionally and 10 pounds frequently. [R. 191]. He noted,

> In terms of prognosis, this individual is so tied into her disability status that it's going to be quite difficult for her to shift gears and realize that she has the capability of performing work and other activities at a higher level than she appears to have been up to this point in time. Her disability is totally ingrained within her attitudes at this point in time and that is going to be difficult to change. I do feel she is physically capable of working at a much greater level than she states that she does....
>
> The patient is not total(ly) disabled from any and all occupations for which she has the training, education and experience. She is capable of performing many occupations within appropriate guidelines and restrictions on her activities.... [R. 192].

(Dr. Jewell's report was sent to Dr. Kennedy for comment but he was no longer in practice and did not respond.)

* The report of a surveillance conducted on Ms. Carswell which showed her getting in and out of cars in a normal, unrestricted fashion; going to the dentist; shopping for groceries; placing shopping bags in the trunk of her car; driving in traffic, etc. [R. 126–134].

* A report of an office visit with Dr. Kennedy's colleague, Dr. Calvin J. Johnson, who examined her for the first time on January 7, 1999. He diagnosed: 722.52—Painful degenerative disk disease, L4–5, and commented,

> This lady has painful degenerative disk disease. She is limited in what she is able to do. Future employment should not require repeated bending, stooping, or squatting, heavy lifting, working over rough terrain, excessive ladder climbing or stair climbing, vigorous or strenuous pushing or pulling, or repeated or vigorous jostling such as operating machinery over rough terrain or working above the level of the shoulders. Ideally, she should be able to control her posture with respect to sitting or standing.... It is evident from Dr. Kennedy's note and from my review that there are things this lady might be able to do with appropriate training. She has transferable skills that would depend upon the completion of the evaluation by the vocational counselor but medically a sedentary type of employment or semi-sedentary employment as per the restrictions above would seem reasonable. [R. 119].

* The report of a "transferable skills analysis," dated April 15, 1999, and done by one of MetLife's rehabilitation coordinators. Using Dr. Calvin J. Johnson's work restrictions, the rehabilitation coordinator found that, taking into account Ms. Carswell's age, education and work experience, she has good transferable skills enabling her to perform semi-skilled work in the electronics industry that is within her current functional capacity. The report concludes that she is not totally disabled from performing any and all occupations

for which she is qualified and physically capable of performing. [R. 112–113].

* A letter asking for Dr. Calvin Johnson's comments on the results of the surveillance on Ms. Carswell and the transferable skills analysis. [R. 110].

* A response from Dr. Johnson, dated May 18, 1999, giving his opinion that the videotape was grossly inadequate for assessing transferable skills because of the very limited amount of activity it showed. He concluded,

> We (he and Dr. Kennedy) have stated that she probably can do semi-sedentary type work with the restrictions as given. I feel that the assessment by a vocational counselor would add to the information necessary to determine just exactly what type of employment that would be. [R. 108–109].

* A letter from independent medical examiner Neal A. Jewell, who was also asked to comment on the videotape and the transferable skills analysis. Dr. Jewell agreed that she was capable of performing the various electronics assembly jobs described in that report. [R. 94–95].

* Information from the Department of Labor website as of May 27, 1999, and again as of October 26, 1999, showing that there were electronics assembly jobs available in Ms. Carswell's geographic district. [R. 82–91].

* A lengthy letter of February 1, 2000, from MetLife to Ms. Carswell explaining why she no longer qualified for long-term disability benefits and indicating that benefits would be terminated as of February 11, 2000. [R. 71–96].

* A letter of February 25, 2000, from Ms. Carswell's attorney, requesting a review. [R. 65–67].

* A report of a second office visit with orthopedist, Dr. Calvin J. Johnson, dated March 3, 2000. Dr. Johnson took x-rays of her back and found only minimal changes from films taken two years earlier. His diagnostic impression remained: 722.52— Painful degenerative disk disease, L4–5. [R. 57].

* A letter from MetLife back to Ms. Carswell's attorney, advising that the review had been completed, that the new evidence had been considered, and that the decision to terminate benefits would not be changed. [R. 52–55].

In its previous opinion, this Court found that Ms. Carswell suffered from a painful permanent condition but that her treating physicians believed that she was capable of returning to work if a job could be found that met her many physical restrictions. That earlier record contained two vocational assessments (paid for by MetLife) indicating that she had no transferable work skills suitable for a job within her physical limitations. The Court suggested that MetLife concentrate its efforts on obtaining the education and/or training Ms. Carswell needed for suitable occupation.

The medical evidence in the current record shows no physical improvement and no significant deterioration. It also shows that Ms. Carswell has not received any vocational training. Ms. Carswell argues that, in the absence of any medical improvement or evidence of new vocational skills, her situation remains unchanged and this Court's previous ruling is *res judicata*. She also argues that MetLife, unhappy with the Court's previous ruling, has done everything it could to terminate her benefits, including spying on her.

The Court does not see MetLife's actions in such a sinister light. For one thing, as plan administrator, MetLife has an ongoing duty to ensure that the plan participants remain eligible for benefits. There is nothing unusual about sending a beneficiary to an independent medical examiner.

(Presumably the surveillance is *not* a routine matter, however.) For another thing, as attested by Frank R. Anderson, a MetLife Litigation and Appeal Analyst, the plan in question is funded solely by Raytheon employee contributions and, since 1994, there has been no insurance component to the plan. This means that MetLife has no direct financial interest in terminating benefits.

Nor does the Court believe that *res judicata* or collateral estoppel principals apply to this case. In every ERISA case, the Court must review the plan administrator's actions in terms of the administrative record upon which his or its decision was based. The record available today is remarkably consistent. All physicians appear to believe that Ms. Carswell can work within certain sedentary or semi-sedentary restrictions. There is also uncontradicted evidence that she already has skills that would allow her to work in some kind of electronics assembly position. And, finally, there is also evidence that jobs of this type are currently available in Ms. Carswell's geographic district. Based on this more recent administrative record, the Court finds that MetLife acted rationally, in light of the plan's provisions, in terminating Ms. Carswell's benefits.

Accordingly, the motion for judgment on the administrative record filed by Raytheon Employees Disability Trust and MetLife [Doc. 11] will be granted and this action will be dismissed.

### ORDER

Angela Carswell, a former employee of the Raytheon Company, brings this action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, challenging the termination of her long-term disability benefits by the Raytheon Employees Disability Trust (Raytheon), as administered by the Metropolitan Life Insurance Company (MetLife).

Pursuant to a memorandum opinion this day passed to the Clerk for filing, the motion for a judgment on the administrative record filed by Raytheon and MetLife [Doc. 11] is hereby GRANTED and this action is DISMISSED.